UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LUIS FERNANDO DE LA ROCHA-CARLON,<br><br>Defendant. | No. 1:14-cr-00227-DAD-BAM-1<br><br>ORDER DENYING DEFENDANT LUIS FERNANDO DE LA ROCHA-CARLON MOTION FOR MODIFICATION OF SENTENCE UNDER 18 U.S.C. § 3582(c)(1)(A)<br><br>(Doc. Nos. 58, 65) |

Pending before the court is a motion for a reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A) brought on behalf of defendant Luis Fernando De La Rocha-Carlon. (Doc. Nos. 58, 65.) That motion is based in part on the purported risks allegedly posed to defendant by the ongoing coronavirus ("COVID-19") pandemic. For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On October 23, 2014, a two-count indictment was returned charging defendant De La Rocha-Carlon and his co-defendant with one count of conspiracy to distribute and to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 846 and 841(a)(1) (Count One) and one count of possession with intent to distribute, and aid and abet the possession with intent to distribute, methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (Count

Two).  (Doc. No. 14.)  On June 13, 2016, defendant De La Rocha-Carlon entered a plea of guilty to Count One of the indictment, pursuant to a written plea agreement.  (Doc. Nos. 43, 44.)  On August 29, 2016, the court sentenced defendant De La Rocha-Carlon to 108 months imprisonment in the custody of the U.S. Bureau of Prisons ("BOP").  (Doc. Nos. 49, 50.)[1]  The court also imposed the mandatory $100 special assessment.  (*Id*.)

Defendant De La Rocha-Carlon is currently serving his sentence at CI North Lake Correctional Institution ("CI North Lake") in Baldwin, Michigan.  (Doc. Nos. 65 at 2; 66 at 4.)  As of the date of this order, defendant has served approximately 81 months, or 71% of his full 108-month custodial sentence.  (Doc. Nos. 66 at 4; 66-1 at 4; 67 at 3.)  Accounting for good time credit, his projected release date is June 9, 2022 according to BOP's inmate data records.  (Doc. Nos. 66 at 4; 66-1 at 4.)

On February 25, 2021, defendant filed a *pro se* motion seeking a reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 58.)  The court referred defendant's motion to the Federal Defender's Office.  (Doc. Nos. 61, 62.)  On June 25, 2021, appointed counsel filed a supplemental memorandum in support of defendant De La Rocha-Carlon's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 65.)  The government filed its opposition to the pending motion on July 8, 2021, and defendant filed a reply thereto on July 16, 2021.  (Doc. Nos. 66, 67.)

Defendant De La Rocha-Carlon has received the Johnson & Johnson COVID-19 vaccine while in custody.  (Doc. Nos. 65 at 6; 66 at 1.)

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances.").  Those limited

---

[1] The court did not impose a term of supervised release because defendant is a deportable alien and subject to deportation following the service of his term of imprisonment.  (*See* Doc. No. 47 at 14; U.S.S.G. § 5D1.1(c)).

2

circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[2] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[3]

---

[2] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the regional director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

[3] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 1B1.13 (U.S. Sent'g Comm'n 2018)[4]; *see also United States v. Gonzalez*, 451 F. Supp. 3d 1194, 1197 (E.D. Wash. 2020) (noting that many courts have relied on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed the FSA and authorized defendants to file compassionate release motions). However, the Ninth Circuit recently held "that the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021). "In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to § 3582(c)(1)(A) motions filed by a defendant." *Id.*

---

intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, Law360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, Law360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[4] According to U.S.S.G. § 1B1.13(2), to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). However, as the Ninth Circuit recently clarified, "[t]his dangerousness finding is not statutorily required under 18 U.S.C. § 3582(c)(1)(A)(i), but [it] is part of the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13(2)." *United States v. Aruda*, 993 F.3d 797, 799 (9th Cir. 2021).

The Ninth Circuit clarified that "[t]he Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Id.* (citing *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020)).

In so holding, the Ninth Circuit joined the five other circuits who have addressed this issue and have unanimously held "that U.S.S.G. § 1B1.13 only applies to § 3582(c)(1)(A) motions filed by the BOP Director, and does not apply to § 3582(c)(1)(A) motions filed by a defendant." *Id.*; *see, e.g., United States v. Brooker (Zullo)*, 976 F.3d 228, 237 (2d Cir. 2020) ("[T]he First Step Act freed district courts to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release. Neither Application Note 1(D), nor anything else in the now-outdated version of Guideline § 1B1.13, limits the district court's discretion."); *United States v. Jones*, 980 F.3d 1098, 1111 (6th Cir. 2020) ("In cases where incarcerated persons file motions for compassionate release, federal judges may skip step two of the § 3582(c)(1)(A) inquiry and have full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13."); *Gunn*, 980 F.3d at 1181 ("[T]he Guidelines Manual lacks an 'applicable' policy statement covering prisoner-initiated applications for compassionate release. District judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review."); *United States v. McCoy*, 981 F.3d 271, 284 (4th Cir. 2020) ( "In short, we agree with the Second Circuit and the emerging consensus in the district courts: There is as of now no 'applicable' policy statement governing compassionate-release motions filed by defendants under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider any extraordinary and compelling reason for release that a defendant might raise.'") (citation omitted); *United States v. Maumau*, 993 F.3d 821, 837 (10th Cir. 2021) ("We therefore agree with the district court that under the second part of § 3582(c)(1)(A)'s test, its finding that extraordinary and compelling reasons warranted a reduction in Maumau's case was not constrained by the Sentencing Commission's existing policy statement, U.S.S.G. § 1B1.13.").

/////

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted. *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate release brought pursuant to § 3582(c) as amended by the FSA, district courts to have done so agree that the burden remains with the defendant. *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id*. Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id*.

*United States v. Rodriguez*, 424 F. Supp. 3d 674, 680 (N.D. Cal. 2019); *see also United States v. Ramirez-Suarez*, No. 16-cr-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *United States v. Parker*, 461 F. Supp. 3d 966, 970 (C.D. Cal. 2020); *United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in § 3553(a)).

**A.     Administrative Exhaustion**

The parties agree that defendant has exhausted his administrative remedies prior to filing his pending § 3582 motion. (Doc. Nos. 65 at 7–8; 66 at 4.) Because failure to exhaust is normally viewed as an affirmative defense, which must be pled and proven, the court will accept the government's concession on this point and turn to the merits of defendant's motion.

6

## B. Extraordinary and Compelling Reasons

According to the Sentencing Commission's policy statement, "extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D). As addressed above, even though the catch-all of "other reasons" was included in the policy statement at a time when only the BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions for reductions in their sentence under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-00236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases.) Moreover, in light of the Ninth Circuit's decision in *Aruda*, while U.S.S.G. § 1B1.13 may inform its determination, this court is not restricted thereby and instead has "full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Jones*, 980 F.3d at 1111.

The medical condition of a defendant may warrant the granting of compassionate release by the court where the defendant "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id*. In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

> The defendant is
>
> (I)  suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1(A)(ii).  Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, many courts have concluded that the risks posed by COVID-19 may tip the scale in favor of release when the particular circumstances of a case are considered in their totality.  *See, e.g.*, *Parker*, 461 F. Supp. 3d at 980 ("Since the onset of the COVID-19 pandemic, courts have determined that inmates suffering from conditions such as hypertension and diabetes are now at an even greater risk of deteriorating health, presenting 'extraordinary and compelling' circumstances that may justify compassionate release.") (collecting cases); *United States v. Rodriguez*, 451 F. Supp. 3d 392, 405 (E.D. Pa. 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence.  But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors.  Thus, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less."  U.S.S.G. § 1B1.13, cmt. n.1(B).[5]

In his pending motion, defendant argues that extraordinary and compelling reasons warranting a reduction of his custodial sentence exist because of the "subpar conditions at CI North Lake," where "inmates and prison officials alike forgo wearing masks and social distancing is not observed," and because his "weight issues increase the likelihood of serious complications if he were to contract COVID-19."  (Doc. No. 65 at 2, 3, 5, 10.)  According to defendant, he is 5'7" tall and weighs 186 lbs., so he has a body mass index "BMI" of 29.1, which the U.S. Centers for Disease Control and Prevention ("CDC") classifies as overweight.  (*Id.* at 3.)  In addition, defendant asserts that he needs to provide care for his ailing diabetic father, who resides in Sinaloa, Mexico, and "would like his son to be around to serve as his caretaker."  (*Id.* at 2.)

---

[5] Here, however, because defendant Rocha-Carlon is only 33 years old (Doc. No. 58 at 1), his age and age-related factors do not play a role in consideration of his pending motion.

In its opposition to the pending motion, the government acknowledges that defendant De La Rocha-Carlon's being slightly overweight "is identified by the CDC as a risk factor for COVID-19" that may increase his risk of suffering a severe illness, but argues that fact alone is insufficient to establish the existence of extraordinary and compelling reasons warranting defendant's release. (Doc. No. 66 at 7.) The government argues that the mere existence of COVID-19 in society or in the correctional institution where defendant De La Rocha-Carlon is imprisoned is not an extraordinary and compelling reason justifying the granting of the requested relief. (*Id.*) The government emphasizes that of particular importance is the fact that defendant De La Rocha-Carlon has already been vaccinated against COVID-19, thereby undermining his argument that extraordinary and compelling reasons exist based on the risk of severe illness posed to him if he were to contract COVID-19. (*Id.* at 1, 8–9) (citing cases). Finally, the government notes that there are currently no reported active cases of COVID-19 infections at North Lake CI, where defendant is imprisoned. (*Id.* at 5) (citing *COVID-19*, FEDERAL BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited July 20, 2021)).[6]

In reply, defendant argues that even though he is vaccinated, he is still at risk for suffering serious complications if he contracts the COVID-19 virus because the Delta variant of COVID-19 "appears to be more transmissible, more likely to require hospitalization, and is somewhat resistant to existing vaccines." (Doc. No. 67 at 2.) Defendant also emphasizes that he is unable mitigate that risk by "usi[ng] masks consistently, be[ing] in ventilated spaces, . . . physical distanc[ing], [and] avoid[ing] crowding," because "[s]ocial distancing is not observed by any measure and inmates and guards alike do not wear masks." (*Id.* at 2–3.) Thus, defendant maintains that his "receiving a vaccine does not overcome the unsafe conditions at [CI] North Lake, which, combined with his own health issues and the rise of the Delta variant, still would constitute an extraordinary and compelling reason for his release." (*Id.* at 3.)

---

[6] The government also argues that "[t]o the extent defendant De La Rocha-Carlon is complaining about the conditions of his confinement at [CI North Lake], venue over such a claim is not proper in the Eastern District of California" because "[a]n inmate challenging the manner, location, or conditions of his sentence may bring a habeas petition under 28 U.S.C. § 2241" in the district court "that has personal jurisdiction over the petitioner's custodian." (Doc. No. 66 at 11.)

There is no dispute that the CDC has recognized that being overweight "can make you more likely to get severely ill from COVID-19." *See People with Certain Medical Conditions*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last updated May 13, 2021). The CDC has clarified that "[s]evere illness means that a person with COVID-19 may need: hospitalization, intensive care, a ventilator to help them breathe, or they may even die." *Id.* Despite the fact that defendant De La Rocha-Carlon is overweight, however, the court concludes that he has failed to show the existence of extraordinary and compelling reasons calling for his release from confinement in light of the critical fact that he is now fully vaccinated, and CI North Lake is currently reporting zero active COVID-19 cases. In the court's view, this combined with the fact that defendant is an otherwise healthy 33-year-old man (he has not asserted that he suffers from any co-morbidities or other medical conditions) suggests that any risk to defendant of both contracting COVID-19 and suffering a severe illness as a result fails to rise to the level of extraordinary and compelling reasons justifying his release.

To the extent defendant argues that the vaccines do not provide complete immunity from COVID-19 (Doc. No. 65 at 6), the court finds defendant's argument in this regard to be unpersuasive. While it appears that vaccinated individuals may nonetheless contract COVID-19, defendant does not claim that a vaccinated individual are likely to also suffer from a *severe* illness as a result—only that a vaccinated individual may still contract the virus. Based upon news reports, it would also appear that it is exceedingly rare for a vaccinated individual to both contract the virus and to suffer a severe illness as a result. *See* Lila Seidman, *Napa County Records First Death of fully Vaccinated Person from COVID-19*, June 7, 2021, https://www.latimes.com /california/story/2021-06-07/napa-county-records-first-fully-vacinated-person-covid-death (last visited June 15, 2021). Here, defendant is seeking his release from prison based on the argument that the Johnson & Johnson vaccine which he received appears to be less effective (60%) than other vaccines in preventing COVID-19 infection from the prominent Delta variant of the virus. (Doc. Nos. 65 at 6; 67 at 2.) According to the CDC, authorized vaccines in the U.S., including the Johnson & Johnson (J&J)/Janssen vaccine, "are highly effective at protecting vaccinated

people against symptomatic and *severe* COVID-19." *See COVID-19: Interim Public Health Recommendations for Fully Vaccinated People*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html (last updated July 16, 2021) (emphasis added). At this point, medical evidence strongly suggests that fully vaccinated individuals, like defendant De La Rocha-Carlon, are very well protected against becoming severely ill from COVID-19. *See United States v. Ochoa-Alapisco*, No. 14-cr-378-ADM-LIB, 2021 WL 2322680, at *3 (D. Minn. June 7, 2021) (denying compassionate release because "any risk . . . has been substantially reduced because [defendant] is likely now fully vaccinated" which "provides him with significant protection against severe illness or death from COVID-19 should he become reinfected"); *United States v. Willis*, 3:15-cr-00465-BR, 2021 WL 2179256, *3-4 (D. Ore. May 27, 2021) (concluding that federal prisoners who have been vaccinated but suffer from chronic medical conditions that would put them at serious risk of severe illness from COVID-19 do not satisfy the extraordinary and compelling standard for compassionate release) (citing cases); *United States v. Smith*, No. 2:98-cr-00009-KJM-CKD, 2021 WL 1890770, at *3 (E.D. Cal. May 11, 2021) ("Although no federal court of appeal appears to have considered the question, district courts across the country, including within this Circuit, have held almost uniformly that a defendant's vaccination undercuts any claims of 'extraordinary and compelling reasons' based on a high risk of infection."); *United States v. Kariblghossian*, No. 2:13-cr-00318-CAS-1, 2021 WL 1200181, at *3 (C.D. Cal. Mar. 29, 2021) (finding no extraordinary and compelling reasons for compassionate release where the defendant has been fully vaccinated); *United States v. Grummer*, ___ F. Supp. 3d ___, 2021 WL 568782, at *2 (S.D. Cal. Feb. 16, 2021) ("Although Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19. Other courts to address the issue have reached similar conclusions."); *United States v. Ballenger*, No. 16-cr-5535 BHS, 2021 WL 308814, at *5 (W.D. Wash. Jan. 29, 2021) ("[B]ecause [defendant] has already been infected and vaccinated, his chronic medical conditions alone do not amount to an extraordinary and compelling reason to warrant compassionate release.").

In light of all of the above, the court concludes that although defendant De La Rocha-Carlon is overweight, which may place him at higher risk of becoming seriously ill if he were to be infected by COVID-19, he has not met his burden of demonstrating extraordinary and compelling reasons for his compassionate release under § 3582(c)(1)(A), in large part because that risk has been significantly mitigated by his receiving the COVID-19 vaccination. Therefore, his motion for compassionate release will be denied.

**C.      Consistency With the § 3553(a) Factors**

Finally, even if defendant De La Rocha-Carlon's motion was supported by a showing of extraordinary and compelling reasons for his compassionate release, the undersigned is not persuaded that the requested reduction in his sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[7] *See Parker*, 461 F. Supp. 3d at 979.

Defendant argues that "[a]lthough the circumstances of the present offense qualified [him] for the serious sentence this Court originally imposed, the sentencing purpose of just punishment does not warrant a sentence that includes exposure to a life-threatening illness," and "the overriding factor under § 3553(a) that was not present at the time of sentencing is the COVID-19 pandemic and the serious risk it presents." (Doc. No. 65 at 15.) Defendant also emphasizes that his release should be considered because he has less than a year remaining to serve of his nine-year term of imprisonment. (*Id.*)

The government counters that "a careful weighing of [defendant] De La Rocha-Carlon's crimes in this case, his characteristics, the need for just punishment, and to protect the public from

---

[7] Title 18 U.S.C. § 3553(a) provides that, in determining the sentence to be imposed, the court shall consider: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, protect the public from further crimes of the defendant and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; any pertinent policy statement issued by the Sentencing Commission; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

future crimes, all are inconsistent with a sentence reduction after applying the § 3553(a) factors." (Doc. No. 66 at 10.) Specifically, the government contends that a reduction in defendant's sentence at this time would be inconsistent with consideration of the § 3553(a) sentencing factors because defendant already received a below guideline sentence of 108 months imprisonment; the advisory guideline range "was determined to be 135 to 168 months imprisonment." (*Id.*) As to the seriousness of defendant's crime, the government emphasizes that defendant "was a courier for a drug trafficking organization responsible for distributing large amounts of methamphetamine from Mexico to California." (*Id.* at 2.) The government notes that defendant, "while in the United States illegally, possessed and attempted to distribute a large quantity [6.5 kilograms] of methamphetamine," and "[w]hen confronted by law enforcement, he fled the scene in his vehicle, which he eventually crashed, and then attempted to dispose of the drugs to avoid detection." (*Id.*) In light of the seriousness of this offense, the government contends that "[i]n essence, De La Rocha-Carlon received a benefit up front" and "any further reduction is not warranted." (*Id.*)

As noted above, defendant is currently serving a 108-month sentence of imprisonment for conspiracy to distribute and to possess with intent to distribute methamphetamine. (Doc. Nos. 49, 50.) With his early acceptance of responsibility, the U.S. Probation Office determined that his total offense level in this case was 33 and his criminal history was I, resulting in an advisory sentencing guideline range calling for a term of imprisonment of between 135 and 168 months. (Doc. No. 47 at 6, 7, 14.) Noting defendant's young age of 26 years old at the time he committed the offense and the fact that he did not have a prior criminal record, the probation officer believed that defendant's "rehabilitation and the safety of the community can be mutually achieved via a sentence below the advisory guideline range," and thus recommended a below guideline range sentence of 108 months imprisonment. (*Id.* at 12, 14–15.) The undersigned relied upon its careful consideration of the § 3553(a) factors in varying downward significantly from the advisory sentencing guideline range, following that recommendation and imposing a 108-month term of imprisonment. (Doc. No. 50 at 2.)

/////

Defendant has not persuaded the court that a reduction in his already arguably lenient sentence would be consistent with the appropriate consideration of the § 3553(a) sentencing factors. Defendant simply does not address any of the sentencing factors in his motion or reply brief (e.g., any rehabilitation efforts, his conduct while in prison, his risk of recidivism, the seriousness of his offense). Defendant essentially argues only that because he has less than a year remaining on his term of imprisonment, he should be released. (Doc. No. 65 at 15.) As of the date of this order, defendant De La Rocha-Carlon has served approximately 71% of his full 108-month custodial sentence, and his projected release date with application of good time credits is June 9, 2022. (Doc. Nos. 66 at 4; 66-1 at 4; 67 at 3.) It is true that "[t]he length of the sentence remaining is an additional factor to consider in any compassionate release analysis,' with a longer remaining sentence weighing against granting any such motion." *United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993 at *6 (N.D. Cal. May 26, 2020) (quoting *United States v. Connell*, No. 18-cr-00281-RS, 2020 WL 2315858, at *6 (N.D. Cal. May 8, 2020)); *see also United States v. Lonich*, No. 1:14-cr-00139-SI-1, 2020 WL 2614874, at *3 (N.D. Cal. May 21, 2020) (denying motions for compassionate release, noting, "the Court finds it significant that defendants have served far less than half of their sentences"). But the relatively short length of the sentence remaining is not alone sufficient to justify defendant's release. This is in part because a reduction in defendant's sentence must also be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a). *See Parker*, 461 F. Supp. 3d at 979.

In the court's view, considering that defendant De La Rocha-Carlon already received a well below-guideline range sentence, a further reduction of his 108-month sentence effectively to one of 81 months would not adequately reflect the seriousness of his offense of conviction, promote respect for the law, provide just punishment, or afford adequate deterrence to criminal

/////
/////
/////
/////
/////

conduct.[8] *See United States v. Purry*, No. 2:14-cr-00332-JAD-VCF, 2020 WL 2773477, at *2 (D. Nev. May 28, 2020); *Shayota*, 2020 WL 2733993 at *5; 18 U.S.C. § 3553(a).

## CONCLUSION

Because defendant De La Rocha-Carlon has failed to demonstrate that "extraordinary and compelling" reasons exist justifying a reduction of his sentence under 18 U.S.C. § 3582(c)(1)(A) or that such a reduction at this time would be consistent with the sentencing factors set forth in 18 U.S.C. § 3553(a), his motion for compassionate release (Doc. Nos. 58, 65) is denied.

IT IS SO ORDERED.

Dated: **July 21, 2021**

UNITED STATES DISTRICT JUDGE

---

[8] In the pending motion, defendant also appears to ask the court to release him to home confinement. (*See* Doc. Nos. 65 at 15; 67 at 3.) However, the CARES Act "'authorizes the BOP—not courts—to expand the use of home confinement' under 18 U.S.C. § 3624(c)(2)." *United States v. Fantz*, No. 5:14-cr-32-BR, 2020 WL 3492028, at *1 (E.D.N.C. June 26, 2020) (quoting *United States v. Nash*, No. 19-40022-01-DDC, 2020 WL 1974305, at *2 (D. Kan. Apr. 24, 2020) (collecting cases)); *see also United States v. Rice*, No. 12-cr-818-PJH, 2020 WL 3402274, at *4 (N.D. Cal. June 19, 2020) (denying a defendant's request for release to home confinement made in conjunction with his motion for compassionate release because "the court has no authority to designate the place of confinement" because the "Bureau of Prisons has the statutory authority to choose the locations where prisoners serve their sentence."); *United States v. Gray*, No. 4:12-cr-54-FL-1, 2020 WL 1943476, at *3 (E.D.N.C. Apr. 22, 2020) (holding that the CARES Act "does not authorize the court to order defendant's placement in home confinement"). The district court may only impose home detention as a condition of supervised release, rather than as part of a sentence of imprisonment. *See Connell*, 2020 WL 2315858, at *5 n.6 & *7. Importantly here, as noted in the presentence report, because defendant is a deportable alien and subject to deportation after serving his term of imprisonment, the court did not impose a term of supervised release, consistent with U.S.S.G. § 5D1.1(c).